UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
THE LEGION OF CHRIST, INCORPORATED,

                    Plaintiff,

     -against-

THE TOWN OF MOUNT PLEASANT, CARL
FULGENZI, SUPERVISOR OF THE TOWN OF
MOUNT PLEASANT, THE ASSESSOR OF THE
TOWN OF MOUNT PLEASANT and THE BOARD
OF ASSESSMENT REVIEW OF THE TOWN OF
MOUNT PLEASANT,

                    Defendants.
----------------------------------------------------------------X

**OPINION AND ORDER**

18 Civ. 11246 (JCM)

      Plaintiff The Legion of Christ, Incorporated ("Legion" or "Plaintiff") commenced this action against the Town of Mount Pleasant ("Town"), Carl Fulgenzi ("Fulgenzi"), the Supervisor of the Town, the Assessor of the Town ("Town Assessor" or "Assessor"), and the Board of Assessment Review of the Town ("BAR") (collectively, "Defendants").[1] (Docket No. 1-1). Plaintiff filed the Complaint on November 14, 2018 in the Supreme Court of the State of New York, County of Westchester ("Westchester County Supreme Court"), (Docket No. 1-1), and Defendants removed the action to this Court on December 3, 2018 pursuant to 28 U.S.C. §§ 1331, 1441, 1443, and 1446, (Docket No. 1). Plaintiff did not move to remand the matter back to state court and discovery proceeded. Presently before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket No. 37). For the reasons set forth below, the Defendants' motion is granted to the extent that this

---

[1] This action is before this Court for all purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c). (Docket No. 15).

Court lacks subject matter jurisdiction over Plaintiff's federal claims, and the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim.

## I. BACKGROUND

The following facts are taken from the Defendants' Statement of Material Facts submitted pursuant to Local Rule 56.1 of the United States District Court for the Southern District of New York, ("Defs. 56.1"), (Docket No. 37-1), Plaintiff's response to Defendants' 56.1 statement, (Pl. 56.1 Resp.), (Docket No. 38-1 at 1-28[2]), Plaintiff's counter-statement, ("Pl. Counter Stmt."), (Docket No. 38-1 at 29-33), Defendants' response to Plaintiff's counter-statement, ("Defs. Resp. to Pl. Stmt."), (Docket No. 42), the parties' exhibits, and the briefs submitted by the parties in support of their respective arguments.

On December 12, 1996, Legion, a not-for profit religious corporation, purchased two parcels of real property from International Business Machines ("IBM"): (1) a 164-acre unimproved parcel ("Unimproved Parcel"); and (2) a contiguous 97-acre parcel that contained a conference center and office buildings ("Conference Center Parcel"). (Defs. 56.1 ¶ 1; Pl. 56.1 Resp. ¶ 1; Pl. Counter Stmt. ¶ 1).  Both parcels are located in the hamlet of Thornwood, which is within the Town. (Defs. 56.1 ¶ 2; Pl. 56.1 Resp. ¶ 2).  Shortly after Legion acquired the two parcels, litigation ensued concerning the tax-exempt status of the Unimproved Parcel and Legion's use of the Conference Center Parcel under the applicable Town zoning ordinances. (Defs. 56.1 ¶ 3; Pl. 56.1 Resp. ¶ 3).

### A. The 1997 Tax Exemption Application and Subsequent Litigation

In 1997, Legion applied for a real property tax exemption for the Unimproved Parcel. (Defs. 56.1 ¶ 4).  Legion proposed making several improvements to the property, including

---

[2] All page numbers, unless otherwise specified, refer to the numbers affixed upon the electronic filing of the document.

constructing a Rosary Path, Stations of the Cross, Grotto of Our Lady, an outdoor chapel, as well as recreation areas. (*See id.*; Pl. 56.1 Resp. ¶ 4); *see also Matter of Legion of Christ v. Town of Mt. Pleasant*, 1 N.Y.3d 406, 409 (2004). The Town Assessor denied Legion's application, and the BAR affirmed the Assessor's decision, upholding the taxable status of the Unimproved Parcel. *See Matter of Legion of Christ*, 1 N.Y.3d at 410. Thereafter, Legion commenced a proceeding in Westchester County Supreme Court pursuant to New York Real Property Tax Law ("RPTL"), Article 7 ("Article 7 petition") against the Town, the Town Assessor, and the BAR "seeking to annul the denial of the exemption." *Id.* (*see also* Defs. 56.1 ¶ 3). Legion moved for partial summary judgment seeking a ruling from the court finding the Unimproved Parcel tax-exempt, and the Town cross-moved for partial summary judgment declaring the parcel fully taxable. (Defs. 56.1 ¶ 5; Defs. Ex.[3] D at 2). By Decision and Order dated June 4, 2001, the Honorable Peter P. Rosato granted the Town's motion and denied Legion's motion, finding the Unimproved Parcel fully taxable. (Defs. 56.1 ¶ 5; *see also* Defs. Ex. D at 6). On March 10, 2003, the Supreme Court for the State of New York, Appellate Division: Second Judicial Department ("Second Department") affirmed Judge Rosato's decision. *See Legion of Christ, Inc. v. Town of Mt. Pleasant*, 303 A.D.2d 507 (2d Dep't 2003); (*see also* Defs. 56.1 ¶ 5).

On February 19, 2004, the New York State Court of Appeals reversed the Second Department's decision, finding that the Unimproved Parcel was entitled to a tax exemption for the 1997-2001 tax years "so long as the improvements which Legion had proposed were in 'good faith contemplated' within the meaning of that standard as set forth in RPTL § 420-a." (Defs. 56.1 ¶ 6) (citing *Matter of Legion of Christ*, 1 N.Y.3d at 413). On remand, the Second Department found that Legion's proposed developments of the Unimproved Parcel were "in

---

[3] Refers to the exhibits annexed to the Declaration of Darius P. Chafizadeh in support of Defendants' Motion for Summary Judgment. (Docket No. 37-2).

good faith contemplated," and that Legion was entitled to a tax exemption for the 1997 through 2001 tax years. *Legion of Christ, Inc. v. Town of Mt. Pleasant*, 10 A.D.3d 609, 610–11 (2d Dep't 2004) (internal quotation marks omitted).

The Town also denied Legion's tax reduction and exemption applications for the 2002 and 2003 tax years, which Legion challenged by filing additional Article 7 petitions. (Pl. 56.1 Resp. ¶ 10; *see also* Pl. Ex.[4] 3 at 3). By Decision and Order dated December 16, 2011, the Honorable John R. LaCava of Westchester County Supreme Court granted Legion's motion for partial summary judgment, finding that Legion "ha[d] met its burden of proving that they were entitled to a property tax exemption for the 2002 and 2003 tax years, for the continued religious use of the subject property" and ordered the Town to refund any overpayment of taxes. (Pl. Ex. 3 at 9-10). Thereafter, Legion continued to file "multiple Article 7 Petitions, challenging the assessed valuation of the Property," as well as an Article 7 petition in response to the Town's denial of Legion's tax exemption renewal application for the 2005 tax year. (Pl. 56.1 Resp. ¶ 11).[5]

## B. The 2003 through 2013 Tax Years

In May 2003, Legion proposed to develop the Unimproved Parcel by constructing a Catholic university named "Westchester University," and submitted a special use permit to the Town Zoning Board of Appeals for approval. (Defs. 56.1 ¶ 19; Defs. Ex. I). Legion also applied for a tax exemption based on its "good faith plan" to develop Westchester University, as well as

---

[4] Refers to the exhibits annexed to the Declaration of P. Daniel Hollis, III in support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment. (Docket No. 38).

[5] There was also additional litigation over whether Legion was permitted as a matter of right under the Town Code to use the Conference Center Parcel as a seminary or whether, as the Town argued, Legion needed a special permit to do so. *See Town of Mt. Pleasant v. Legion of Christ, Inc.*, 7 N.Y.3d 122, 126–28 (2006), *cert. denied*, 549 U.S. 1208 (2007). This litigation similarly wended its way through the lower courts and eventually reached the New York State Court of Appeals, which rejected the Town's argument and found that Legion's use of the Conference Center Parcel was lawful under the Town Code. *Id.* at 129; (*see also* Pl. 56.1 Resp. ¶ 3; Pl. Counter Stmt. ¶ 2).

its other established religious uses of the parcel, which the Town granted for the 2004 tax year. (Pl. 56.1 Resp. ¶ 10; *see also* Pl. Ex. 4 at 4).  However, the Town denied Legion's renewal application for the 2005 tax year, causing Legion to file another Article 7 petition challenging the Town's decision. (Pl. Ex. 4 at 4; *see also* Pl. 56.1 Resp. ¶ 10).  By Decision and Order dated July 10, 2007, Judge LaCava granted Legion's "partial summary judgment on their petition seeking renewal of a religious exemption pursuant to RPTL §§ 420-a (1) (a) 420-a (3)" on the basis of Legion's "actual use of the property for outdoor religious activities," as well as on the "good faith contemplation of the Westchester University plan for the 2005 tax year," and ordered that the Town refund any overpayment of taxes paid by Legion. (Pl. Ex. 4 at 7-10).

Thereafter, for the 2007 through 2012 tax years, the Town granted Legion's tax exemption applications. (Pl. Counter Stmt. ¶ 7; Defs. Resp. to Pl. Stmt. at 11).  However, Legion continued to file tax certiorari proceedings challenging the Town Assessor's valuations of the two parcels. (Defs. 56.1 ¶ 28; Defs. Ex. O at 2).  In May 2012, Legion submitted an application renewing its tax exemption for the Unimproved Parcel. (Defs. 56.1 ¶ 31).  Legion submitted correspondence from Father ("Fr.") Luis Garza with the application, which detailed Legion's financial difficulties and also conveyed that Legion was planning on selling the Unimproved Parcel and Conference Center Parcel. (Defs. 56.1 ¶¶ 32-33; Defs. Ex. Q).  Notwithstanding Legion's intention to sell the two parcels, the Town granted its tax exemption application for the 2012 and 2013 tax years. (Defs. 56.1 ¶ 34).  On March 28, 2014, Legion sold the Conference Center Parcel to Efeckta IA, Inc., which operates the EF Academy School ("EF Academy") for international students. (Defs. 56.1 ¶ 35).

**C.  The 2012 Settlement Agreement**

On November 20, 2012, the Town and Legion entered into a Stipulation of Settlement, which was intended to resolve the myriad of tax certiorari proceedings spanning from 1998

through 2012. (Defs. 56.1 ¶¶ 27-28; Defs. Ex. O).  On May 27, 2014, Legion filed a motion in Westchester County Supreme Court seeking to enforce the parties' 2012 Settlement Agreement. (Defs. 56.1 ¶ 60; Defs. Ex. T).  Legion alleged that the Town had agreed to pay $2.2 million to resolve the tax proceedings, but had only paid Legion $1,828,234.80, leaving a "shortfall in the sum of $371,765.20." (Defs. Ex. U at 3).  By Decision and Order dated March 12, 2015, the Honorable Bruce E. Tolbert denied Legion's motion. (Defs. 56.1 ¶ 63; Defs. Ex. U at 2-4). Legion appealed, and the Second Department affirmed Judge Tolbert's decision on June 14, 2017, writing that "[c]ontrary to Legion's contentions, the unambiguous terms of the comprehensive settlement require the Town to pay Legion the sums of $320,400 and $290,300, and for the School District to pay the sum of $665,000, which amounts have all been paid." (Defs. Ex. U at 8).

**D.  The 2014 Tax Exemption Renewal Application and Subsequent Litigation**

On May 15, 2014, Legion submitted an application to renew its tax exemption for the Unimproved Parcel. (Defs. 56.1 ¶ 39; Defs. Ex. V).  Legion indicated in the application that there had been a change "in the use or uses of the property," explaining that "[i]n the past, the property was used primarily by priests residing at, or visiting, the adjoining conference center" and "[a]lthough the conference center was sold in March 2014, the [Unimproved Parcel] continues to be used, for outdoor religious and recreational purposes on a regular basis, by priests and others from the Legionary community located in Rye, New York." (Defs. Ex. V at 3-5).  Legion also explained that there "had been some negotiations with a potential buyer" to sell the Unimproved Parcel, but it was not yet under contract. (Defs. 56.1 ¶ 41; Defs. Ex. V at 5).

By letter dated May 20, 2014, the Town Assessor, James Timmings ("Assessor Timmings" or "Timmings"), denied the application. (Defs. 56.1 ¶ 43; Defs. Ex. V at 9-11). Assessor Timmings wrote that the "[Unimproved] [P]arcel was exempt as a 'support' parcel for

6

one main improved parcel [the Conference Center Parcel]" which "ha[d] been sold and [was no longer occupied by] the Legion of Christ," and that the previous exemption "had been granted for educational purposes," which was "not moving forward." (Defs. Ex. V at 9). Assessor Timmings reiterated these reasons during his deposition, testifying that he denied Legion's tax exemption renewal application based on: (1) Legion's sale of the Conference Center Parcel; (2) Legion's marketing of the Unimproved Parcel; (3) conversations with Fr. Jose Felix Ortega which led Timmings to believe that "Legion was finished with the [Conference Center Parcel and the Unimproved Parcel]," which Timmings testified "heavily influenced" his decision; (4) "the short May 2014 Exemption Application submitted by Legion;" and (5) the difficulty accessing the Unimproved Parcel and its continued undeveloped nature. (Defs. 56.1 ¶ 47; Defs. Ex. E at 29-30, 34).

Although Timmings testified that he did not recall Defendant Fulgenzi, the Town Supervisor, advising him to place the Unimproved Parcel back on the tax rolls, (Defs. Ex. E at 38-39), Defendant Fulgenzi's testimony and newspaper article indicate otherwise. Fulgenzi testified that he conveyed to Timmings that, in his opinion, the Unimproved Parcel should be placed "back on the tax rolls,"(Pl. Ex. 9 at 8-9, 11-12), and he also penned a "Letter to the Editor" for the *Examiner*, a local newspaper, in which Fulgenzi wrote that he "advised Assessor Jim Timmings to put the vacant portion of the property [the Unimproved Parcel] on the tax rolls as soon as [they] were advised that the property was for sale," (Pl. Ex. 8 at 2). After being confronted with the article during his deposition, Fulgenzi acknowledged that while Timmings had the ultimate authority to decide whether to place the Unimproved Parcel back on the tax rolls, that Fulgenzi had advised him to do so. (Pl. Ex. 9 at 11-12). Fulgenzi also testified that he

7

"fe[lt] that [Legion] w[as] using religious organization to protect the status of the [Unimproved Parcel] as an exempt property." (*Id.* at 11).

After submitting a grievance to the BAR, which affirmed Timmings' denial of Legion's renewal application, Legion filed an Article 7 petition challenging the decision. (Defs. 56.1 ¶¶ 54-55; Defs. Ex. N at 2-3, 9-13). Thereafter, the Town continued to deny Legion's applications for real property tax exemptions for the Unimproved Parcel for the 2015-2019 tax years, causing Legion to file additional Article 7 petitions challenging those denials as well as the assessed valuations of the parcel. (Defs. 56.1 ¶¶ 56-58; *see also generally* Defs. Ex. N). On June 24, 2019, Legion filed a motion for partial summary judgment in the state court proceedings, seeking an order declaring the Unimproved Parcel tax-exempt for the 2015 to 2019 tax years and directing the Town to refund any overpayment in taxes. (Def. Ex. W at 2-3; Defs. 56.1 ¶ 59). The Town cross-moved for summary judgment on August 19, 2019. (Defs. Ex. W at 4-5). Both motions are fully briefed and presently *sub judice*. (Defs. 56.1 ¶ 59).

**E.  Legion's Sale of the Unimproved Parcel**

On July 22, 2014, Legion entered into a Sale and Purchase Agreement ("Purchase Agreement") with Baker Residential Limited Partnership ("Baker") to sell the Unimproved Parcel. (Defs. 56.1 ¶¶ 38, 64; Defs. Ex. S). The Purchase Agreement provided that Baker "would seek the necessary Town approvals for the 'subdivision of and construction and development on the [Unimproved Parcel] for single family residential units.'" (Defs. 56.1 ¶ 65 (quoting Defs. Ex. S at 7)). On November 21, 2014, Baker submitted a subdivision application seeking to divide the Unimproved Parcel into residential lots. (Defs. 56.1 ¶ 66; Defs. Ex. X). Fr. Lino Ortero signed the application on Legion's behalf, (Defs. Ex. X at 3), and on February 1, 2018, the Town Planning Board adopted resolutions granting Baker, *inter alia*, final subdivision approval. (Defs.

56.1 ¶ 68). Thereafter, a subdivision plat was prepared for Baker's subdivision. (Defs. Ex. Z). However, due to ongoing litigation between Legion and Baker, the plat has not been signed and the transfer of the Unimproved Parcel has not yet occurred. (Defs. 56.1 ¶¶ 69-71).

## II. LEGAL STANDARDS

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The moving party has the initial burden of showing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (citation and internal quotation marks omitted). "A fact is material if it might affect the outcome of the suit under the governing law." *Id.*

"In determining whether summary judgment is appropriate, this Court will 'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, the non-moving party cannot defeat a motion for summary judgment simply by relying on unsupported assertions or conclusory statements, *see Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995), and must do more than demonstrate the existence of "some metaphysical doubt as to the material facts," *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986)).  Rather, to defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467–68 (S.D.N.Y. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

### III.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Defendants' threshold argument is that the Court lacks subject matter jurisdiction over Plaintiff's federal claims and that the case should be remanded to state court for all further proceedings. (Docket No. 37-33 at 10-15).  Defendants alternatively argue that they are entitled to summary judgment because: (1) Plaintiff's challenges to the 2014 and 2015 tax exemption assessments are untimely; (2) Plaintiff's substantive due process claim fails as a matter of law; (3) Plaintiff's Fourteenth Amendment Equal Protection claim fails as a matter of law; (4) Plaintiff's claims under the New York State Constitution should be dismissed as duplicative and otherwise on the merits; (5) the Town Assessor and the BAR are entitled to qualified immunity; (6) the claims against Defendant Fulgenzi should be dismissed due to his lack of personal involvement in the denial of Plaintiff's religious tax exemption; and (7) to the extent that Plaintiff interposes a *Monell* claim against the Town, it would fail on the merits. (*Id.* at 15-31).

### A.  Subject Matter Jurisdiction

Defendants assert that the Tax Injunction Act of 1937 ("TIA") and the principle of comity deprive this Court of subject matter jurisdiction over Plaintiff's claims brought under 42 U.S.C. § 1983. (Docket No. 37-33 at 11, 13-15).  Specifically, Defendants argue that Plaintiff's first and second causes of action—which seek damages under § 1983 and stem from the Town's alleged retaliatory use of its taxing authority and deprivation of Plaintiff's due process rights—are barred from federal review because they pertain to state tax proceedings and Plaintiff has

adequate means for seeking legal redress in state court. (*Id.* at 13-15).  Plaintiff responds that the Court has subject matter jurisdiction because Plaintiff is "*not* asking th[e] Court to issue a ruling impacting state tax" or "to change any of the Town's assessments or taxable statuses," but rather is "asking for monetary damages for years of discriminatory practices by the Town and its officials." (Docket No. 39 at 27) (emphasis in original).  Plaintiff explains that they have "already taken advantage of the plain, speedy, and efficient state remedies—and [they] have won," but "[t]his case is different" because it "seeks damages for—by Defendants' own admission—the [Plaintiff] being treated differently than every other Town resident for two decades." (*Id.* at 29).  After a careful review of the parties' respective arguments, the Court finds that it does not have subject matter jurisdiction over Plaintiff's federal claims.

"'It is a fundamental precept that federal courts are of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978)).  "A 'case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013) (quoting *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000)).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)).

The TIA provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.  "This provision 'has its roots

in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations.'" *Long Island Lighting Co. v. Town of Brookhaven ("LILCO")*, 889 F.2d 428, 431 (2d Cir. 1989) (quoting *Tully v. Griffin, Inc.*, 429 U.S. 68, 73 (1976)).  "Before the TIA may be invoked to bar district court jurisdiction, two conditions must exist: (1) the assessment or surcharge in question must constitute a tax; and (2) the plaintiff must lack a 'plain, speedy and efficient remedy in state court.'" *Marshall v. Town of Middlefield*, 360 F. App'x 227, 228 (2d Cir. 2010) (summary order) (quoting *Hattem v. Schwarzenegger*, 449 F.3d 423, 427 (2d Cir. 2006)).  "[T]he TIA should be interpreted to preclude jurisdiction only where 'state taxpayers seek federal-court orders enabling them to *avoid paying state taxes*[.]'" *Luessenhop v. Clinton Cnty., N.Y.*, 466 F.3d 259, 267 (2d Cir. 2006) (emphasis in original) (quoting *Hibbs v. Winn*, 542 U.S. 88, 107 (2004)).

"More embracive than the TIA, the comity doctrine applicable in state taxation cases restrains federal courts from entertaining claims for relief that risk disrupting state tax administration." *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 417 (2010) (citing *Fair Assessment in Real Estate Ass'n v. McNary ("Fair Assessment")*, 454 U.S. 100, 102 (1981)). Indeed, "[w]hile it is the [TIA] that prevents federal courts from giving injunctive relief … or declaratory relief … as long as there is a plan, speedy and efficient remedy in state court, it is the principle of comity that prevents a taxpayer from seeking damages in a § 1983 action if a plain, adequate, and complete remedy may be had in state court." *LILCO*, 889 F.2d at 431 (citing *Fair Assessment*, 454 U.S. at 116) (internal citations omitted).  The principle of comity compels this conclusion, as "[a] 'State found to have imposed an impermissibly discriminatory tax retains flexibility in responding to this determination.'" *Levin*, 560 U.S. at 428 (quoting *McKesson Corp. v. Div. of Alcoholic Beverages and Tobacco, Fla. Dep't of Bus. Regulation*, 496 U.S. 18,

39–40 (1990)). This prohibition applies "even where a plaintiff raises constitutional issues." *Greenberg v. Town of Scarsdale*, No. 09 Civ. 2281 (SCR)(PED), 2009 WL 7765836, at *3 (S.D.N.Y. Oct. 16, 2009), *report and recommendation adopted*, 2011 WL 1118709 (S.D.N.Y. Mar. 24, 2011), *aff'd*, 477 F. App'x 849 (2d Cir. 2012).

Plaintiff claims that the Town violated its due process and equal protection rights under § 1983 by repeatedly denying its tax exemption applications and returning the Unimproved Parcel back to the taxable rolls. (Docket No. 1-1 ¶¶ 86, 91-114). Plaintiff primarily asserts that this Court has subject matter jurisdiction over these claims because Plaintiff is not "asking this Court to issue a ruling impacting a state tax" or "to change any of the Town's assessments of taxable statuses." (Docket No. 39 at 27-29). Despite these assertions, Plaintiff nevertheless claims that the Town's repeated denials of tax exemption renewal applications, (Docket No. 1-1 ¶¶ 76-86), (1) were "clearly an act of retaliation" in response to Plaintiff's motion to correct the 2012 settlement, thus violating Plaintiff's due process rights, (*id.* ¶¶ 86, 91-101); (2) amounted to "disparate and selective assessment" which violated Plaintiff's equal protection rights, (*id.* ¶¶ 102-111); (3) were "the result of animus and prejudice," (Pl. Counter Stmt. ¶ 10; *see also* Docket No. 39 at 19-21); and (4) constituted unequal treatment that other religious institutions did not face, (Docket No. 39 at 22-23). Resolving these claims necessarily requires the Court to determine whether the Town abused its taxing authority. "However, '[b]y asking the district court to decide this question, ... [Plaintiff] is in effect seeking a federal-court ruling on a local tax matter, precisely the type of suit the Tax Injunction Act was designed to limit.'" *Staten v. Vill. of Monticello*, No. 14-CV-4766 (KMK), 2015 WL 6473041, at *8 (S.D.N.Y. Oct. 26, 2015) (quoting *Bernard v. Vill. of Spring Valley*, 30 F.3d 294, 297 (2d Cir. 1994)); *see also Murphy v. City of Stamford*, Civil Action No. 3:13-CV-00942 (JCH), 2013 WL 5776903, at *5 (D. Conn.

13

Oct. 25, 2013), *aff'd in relevant part, appeal dismissed*, 634 F. App'x 804 (2d Cir. 2015) (dismissing § 1983 claims for lack of subject matter jurisdiction under the TIA and noting that the "Supreme Court has observed that a federal court's determination of unconstitutionality could disrupt the collection of taxes just as fully as an injunction would") (citing *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982)).

While the Plaintiff is not specifically asking this Court to order Defendants to refund Plaintiff's tax payments, it does seek a ruling passing judgment on the constitutionality of the Town's applications of its taxing authority—i.e. whether the Town's repeated denials of Plaintiff's tax exemption applications violated Plaintiff's due process and equal protection rights. (Docket No. 1-1 ¶¶ 76-86, 93-99, 103-111; *see also* Docket No. 39 at 6-7, 16, 18-23). This is precisely the type of determination that would "disrupt" New York State's tax administration, rendering it barred by the principle of comity. *Levin*, 560 U.S. at 417; *see also, e.g.*, *Bernard*, 30 F.3d at 298 (affirming dismissal of § 1983 claims on jurisdictional grounds where the plaintiff already received a state-court ruling that a tax assessment violated state law and opining that a "federal-court ruling on the constitutionality of that illegal act plus damages for the resulting harm … is precisely what *Fair Assessment* and *LILCO* held was excluded from federal jurisdiction"); *Greenberg v. Town of Scarsdale*, 477 F. App'x 849, 850 (2d Cir. 2012) (summary order) (affirming dismissal of complaint that sought, *inter alia*, damages pursuant to § 1983 where the plaintiff was "in effect seeking a federal-court ruling on a local tax matter," and characterizing it as "precisely the type of suit the TIA and the principle of comity are intended to prohibit") (internal quotations omitted).

Indeed, it is well settled that "[a]ctions under § 1983 seeking damages related to the collection of state taxes are barred by the principle of comity so long as there is a procedurally

14

adequate state alternative procedure for challenging the assessment." *Casciani v. Town of Webster*, 501 F. App'x 77, 80 (2d Cir. 2017) (summary order) (citing *Fair Assessment*, 454 U.S. at 116).  Plaintiff argues that the Supreme Court in *Hibbs v. Winn* "cut out the legs of" *Fair Assessment* and, thus, the parameters of the comity doctrine and TIA are narrower than suggested by Defendants. (Docket No. 39 at 29).  However, the Supreme Court in *Levin* "abrogated the post-*Hibbs* cases that had crimped the comity doctrine and held that comity is '[m]ore embracive' than the TIA because it restrains federal courts from hearing not only cases that decrease a state's revenue, but also those that 'risk disrupting state tax administration.'" *Joseph v. Hyman*, 659 F.3d 215, 218–19 (2d Cir. 2011) (quoting *Levin*, 560 U.S. at 417).  Furthermore, the Second Circuit has explicitly rejected Plaintiff's argument. *See Casciani*, 501 F. App'x at 80 ("[Plaintiff] argues that *Hibbs* … altered the rule of *Fair Assessment*.  But the Supreme Court has rejected this reading of *Hibbs*.") (citing *Levin*, 560 U.S. at 413).

      Plaintiff also argues that it does not seek a ruling on the constitutionality of Defendants' actions, but rather "damages for decades of continuous unequal treatment." (Docket No. 39 at 28-29).  Plaintiff insists that it has "taken advantage of the plain, speedy, and efficient state remedies—and [it has] won" and Defendants have, "by [their] own admission" treated Plaintiff "differently than every other Town resident for two decades." (*Id.* at 29).  However, the Second Circuit "has held that, when the administration of a state tax scheme is involved, even actions by state tax officials that have been held in state court to contravene state laws are not cognizable in federal court." *Hoffer v. Ancel*, 32 F. App'x 593, 597 (2d Cir. 2002) (citing *Bernard*, 30 F.3d 294 (2d Cir. 1994)).  Here, Plaintiff, is seeking "a federal-court ruling on the constitutionality of th[ose] illegal act[s] plus damages for the resulting harm[s]," which is "precisely what *Fair Assessment* and *LILCO* held was excluded from federal jurisdiction." *Bernard*, 30 F.3d at 298;

15

*see also Greenberg*, 477 F. App'x at 850 ("[D]espite [plaintiff's] characterization of [their] claims as falling outside the ambit of the TIA and the principle of comity, all of [their] claims" in essence seek a federal court ruling on a local tax matter, which is barred by the TIA and principle of comity) (quoting *Bernard*, 30 F.3d at 297)).

Furthermore, "[b]ecause New York has procedurally adequate mechanisms for challenging tax assessments, [Plaintiff's] § 1983 damages claim[s] [are] barred by the principle of comity." *Casciani*, 501 F. App'x at 80 (internal citation omitted) (alterations added).  The Second Circuit in *LILCO* deemed Article 7 proceedings and § 1983 actions adequate state court means for litigating unfavorable tax assessment claims. *See* 889 F.2d at 431–33.  Following *LILCO*, courts in this Circuit have repeatedly affirmed the procedural adequacy of these proceedings. *See, e.g.*, *Carnivale v. City of New York*, 17-CV-1868 (WFK), 2017 WL 5558646, at *2 n.1 (E.D.N.Y. Apr. 24, 2017) (dismissing claim based on the TIA's bar and noting the availability of adequate state court procedures "which afford Plaintiff an opportunity to raise his objection to the increase in his property taxes"), *aff'd*, 711 F. App'x 59 (2d Cir. 2018); *Staten*, 2015 WL 6473041, at *8 ("Moreover, the Second Circuit has recognized, 'New York provides several remedies' by which somebody in Plaintiff's position can 'raise all constitutional objections to the real property taxes imposed,' including a declaratory judgment action under New York Civil Practice Law and Rules § 3001 or New York General Municipal Law § 51, a § 1983 action in state court, or an administrative review action challenging the 'validity of [the relevant] assessments'") (quoting *LILCO*, 889 F.2d at 431–32)); *Henke v. City of Newburgh, N.Y.*, 11-CV-3663 (CS), 2012 WL 12883587, at *4 (S.D.N.Y. Apr. 30, 2012), *aff'd*, 519 F. App'x 55 (2d Cir. 2013) (affirming the adequacy of New York State court remedies which include "the procedures in Article 7 of the RPTL, Article 78 proceedings, declaratory judgment actions, and

Section 1983 claims in state court"); *Greenberg*, 2009 WL 7765836, at *4 (affirming the viability of Article 7 proceedings and noting that "[a] claim alleging improper, selective treatment in the assessment of property taxes can also be raised in a § 1983 action in state court"); *Cody Inc. v. Town of Woodbury*, 8 F. Supp. 2d 340, 343 (S.D.N.Y. 1998) ("[I]n this Circuit availability of an Article 7 Proceeding is adequate as a matter of law to satisfy the statutory prerequisite to invoke § 1341").

Plaintiff has frequently taken advantage of some of the above-referenced remedies in New York State court. Specifically, Legion has filed numerous Article 7 petitions challenging the Town's tax assessments, valuations of Plaintiff's property, and tax exemption application denials. (Docket No. 1-1 ¶¶ 21, 24-26, 31-47; *see also* Defs. 56.1 ¶¶ 3, 55-58; Pl. 56.1 Resp. ¶ 10). In fact, Plaintiff acknowledges in the Complaint that "since May 1997, with but a few exceptions, the Legion ha[s] filed tax exemption applications for each of its parcels of real property" and that the Town "denied all of the [Plaintiff's] applications," thus "forc[ing] [Plaintiff] to commence and pursue [] (RPTL) Article 7 proceedings for each parcel for each such tax year." (Docket No. 1-1 ¶¶ 24-26). This includes the Article 7 petitions at the heart of the instant dispute, which challenge, *inter alia*, the tax exemption application denials for the 2014 through 2018 years, and that are presently pending in state court. (*Id.* ¶¶ 76-85; Defs. 56.1 ¶¶ 54-59; *see also* Defs. Ex. W). Furthermore, it is not only the case that the "Plaintiff[] could have pursued [its] … claim[s] in a § 1983 action in state court," *Cloverleaf Realty of N.Y., Inc. v. Town of Wawayanda*, 07-CV-2410 (CS), 2010 WL 11655315, at *3 (S.D.N.Y. Sept. 3, 2010), *aff'd* 423 F. App'x 61 (2d Cir. 2011), Plaintiff actually did so by originally commencing this action in New York State court, (Docket No. 1-1).

Accordingly, because Plaintiff has access to procedurally adequate remedies in New York State court, the TIA and the principle of comity preclude this Court from exercising subject matter jurisdiction over Plaintiff's § 1983 claims.[6]

## B. Plaintiff's State Law Claims

If the Court "has dismissed all claims over which it has original jurisdiction," it may decline to exercise supplemental jurisdiction over any remaining state law claims. 28 U.S.C. § 1367(c)(3). The decision to exercise supplemental jurisdiction "is within the sound discretion of the district court." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117 (2d Cir. 2013). "In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998).

Plaintiff claims that the Defendants' "jointly and severally … violated Plaintiff's due process rights otherwise guaranteed under the Constitution and the laws of the State of New York," and seeks money damages and attorneys' fees for these alleged violations. (Docket No. 1-1 ¶¶ 113-14). Having established that the Court lacks subject matter jurisdiction over Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim. *See, e.g.*, *Dorce v. City of New York*, __ F. Supp. 3d __, 2020 WL 2521320, at *11 (S.D.N.Y. May 17, 2020) (declining to exercise supplemental jurisdiction over state law

---

[6] On reply, Defendants argue that Plaintiff improperly raised claims for the first time in opposition, namely, that the Town violated its due process and equal protection rights by: (1) subdividing the property in 1999; (2) opposing Plaintiff's plans to develop Westchester University; and (3) opposing Plaintiff's residency. (Docket No. 44 at 5). In opposition, Plaintiff did, in fact, argue that Defendants "discriminatory treatment came via its flexing of its taxing muscle" but also came in the form of "manipulating tax-parcel lines to gain an advantage over Legion in zoning and special permits, opposition to Legion's use of the property, including its plan for Westchester University, opposition to Legion's residency, and reneging on a settlement agreement with Legion." (Docket No. 39 at 27-28). Plaintiff's claims stem from the Town's use of its taxing authority to either deprive Plaintiff of its due process rights by retaliating against Plaintiff for moving to enforce the 2012 settlement, (Docket No. 1-1 ¶¶ 86, 91-101, 106), or by disparately and selectively denying Plaintiff's tax exemption applications, (*id.* ¶¶ 102-111). Plaintiff raises these additional theories for the first time in opposition to summary judgment and the Court will not consider them. *See, e.g.*, *Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (summary order) (affirming the district court's decision not to consider claims raised for the first time in opposition to summary judgment) (collecting cases).

claims where the court found that the TIA and comity doctrine divested it of subject matter jurisdiction over claims seeking declaratory and injunctive relief); *Greenberg*, 2009 WL 7765836, at *4 (finding that the court lacked the authority to exercise supplemental jurisdiction over plaintiff's remaining state law claims where the TIA and principle of comity deprived the court of subject matter jurisdiction over plaintiff's § 1983 claims); *see also Marshall v. Town of Middlefield*, No. 3:07cv1079 (MRK), 2008 WL 5157753, at *4 (D. Conn. Dec. 5, 2008), *aff'd* 360 F. App'x 227 (2d Cir. 2010) (summary order) (declining to exercise supplemental jurisdiction over state law claims where the TIA divested the court of subject matter jurisdiction over the federal constitutional claims).

### IV.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted to the extent that the Court concludes that it lacks subject matter jurisdiction over Plaintiff's federal claims.  The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim.

The Clerk is respectfully requested to terminate the pending motion (Docket No. 37) and close the case.

Dated:   July 27, 2020
         White Plains, New York

SO ORDERED:

_____
JUDITH C. McCARTHY
United States Magistrate Judge
